**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————— :
                                    :
JUDI DONNELLY,                      :
                                    :
                Plaintiff,          :
                                    :
        v.                          :        Civil Action No. 11-0046 (RBW)
                                    :
KATHLEEN SEBELIUS, *et al.*,        :
                                    :
                Defendants.         :
———————————————————— :

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the defendants' motions to dismiss.  For the reasons

stated below, the motions will be granted.

## I.  BACKGROUND

The *pro se* plaintiff, who describes herself as "a low income person," represents that she

derives her only income "from Old Age Survivors and Retirement pension from the Trust Fund

established by Franklin Roosevelt and the Congress of the United States."  Complaint

("Compl.") at 12.[1]  She also states that she receives Supplemental Security Income payments and

"is entitled to food stamps and Section 8 housing assistance."  *Id.*  The plaintiff alleges that she

"was automatically enrolled in Part A and Part B of the Medicare program for senior citizens

when she reached eligibility age in Feb[ruary] 2002" and "the Medicaid program known as

Hoosier Health Care or now SHIP, [State Health Insurance Plan] when the [P]art D drug

---

[1]      The plaintiff did not number the pages of her complaint, so the Court will identify the
pages of the complaint as designated by the Court's electronic filing system.

coverage came into effect."[2]  *Id.* at 2.  It appears that the claim being raised by the plaintiff in this case arises from a gap she experienced in her Part D coverage.

The State of Indiana, where the plaintiff resides, through the Family & Social Services Administration, had been paying for the plaintiff's Part B coverage, but according to the plaintiff that coverage ended "in the early months of 2009 without any reason or notification to [the plaintiff]." *Id.* at 2-3.  The plaintiff learned payment for this benefit had been discontinued "when Social Security removed $96.40 from [her] Old Age and Retir[e]ment Trust payment to cover the state[']s payment to MEDICARE for [P]art B coverage." *Id.* at 3.  Rather than pay the Part B premium herself, the plaintiff contends that she "refused to allow this 'shake down operation'" and promptly "opted out of the [P]art B coverage[,] which as well included Part D drug coverage." *Id.*  Apparently, Indiana resumed payment of the Part B premium on the plaintiff's behalf later in 2009, and the plaintiff received "a new card from Social Security medicare advising [her that she] held Part A and Part B plans and the state of Indiana Medicaid pr[o]gram had resumed payment of the [Part] B premium . . . to cover Part B and the attached Part D Drug Plan." *Id.*

The plaintiff "did not have occasion to use this coverage" until September 2010, when she "scheduled two doctors [sic] appointments." *Id.*  In October 2010, the plaintiff was admitted "to the local Bloomington Hospital" and was issued four prescriptions prior to her release. *Id.*  She took the prescriptions to a local pharmacy; the pharmacist filled three of the prescriptions, but they "had to be paid for out of pocket as the pha[r]macist indicated [that the plaintiff] had no

---

[2]       Generally, Part A provides coverage for inpatient care in hospitals, skilled nursing facilities, hospices and home health care; Part B covers medically-necessary services and medical equipment; and Part D provides prescription drug coverage to individuals covered by Medicare.  *See* http://www.medicare.gov/navigation/medicare-basics/medicare-benefits.

Part D . . . coverage." *Id.*  Although the plaintiff was able to pay $51.49 for the first three prescriptions, she could not afford to fill the fourth prescription because it was for a non-generic drug "costing $130.00 for a bottle of 30 capsules or $3.98 per pill." *Id.*  The plaintiff sought assistance from the drug's manufacturer, but her request was refused because the company would "only pay for a drug if the applying party has no insurance whatso[ev]er." *Id.* at 4.

Upon review of the 2009 edition of the Medicare Handbook, the plaintiff found a provision "titled 'Extra help for Medic[a]re Prescriptions coverage,'" under which she believed she qualified. *Id.*  The plaintiff "dialed the medicare 800 number to find out about this program and was refer[r]ed to an advanced resolutions officer" who informed the plaintiff that she "had opteded [sic] out of the Part D coverage on December[] 7[,] 2009," and further advised that the plaintiff "was automatically entitled to 'Extra help'" under a program established in January 2010 called LINET, or Limited Income Newly Eligible Transition Program. *Id.*  The plaintiff believed that she "was entitled to app[l]y for restitution of [her] out of pocket expense for 30 days prior to the expense, which would be September 16, 2010." *Id.*  She also was told that she "would be automatically re-enrol[l]ed by Medicare in a Part D plan if [she] did not choose one [herself]." *Id.*

The plaintiff contends that even after obtaining a letter from her congressman stating that she "was entitled to recieve [sic] 'extra help' from whatever program was in place," the pharmacist, Mrs. Ricker, "refused to accept the proofs" and declined to fill the fourth prescription or reimburse her for the cost of the other three prescriptions. *Id.*  The plaintiff states that she made "[a] second and 3rd call to Medicare 800 number," but was "unsuccessful in resolving the problems" with the agents with whom she spoke. *Id.*  These agents allegedly "tried to discourage [her] from pursuing the 'extra help' programs [and] hung up on [her] when [she]

3

asked them the name of the Director of Medicare." *Id.*  She then represents that she dialed "the social security 800 number" and asked the customer service representative to send her an application for the "extra help" program, only to be informed that she already had Part D coverage through the Pennsylvania Life Insurance Company, "the program chosen for the entire State of Indiana low income seniors when the Bush Drug Plan was impl[e]mented." *Id.* at 5. Although the plaintiff did not receive the "application for the extra help . . . [,] Medicare did send [her] the 2011 medicare handbook." *Id.*

Despite the efforts the plaintiff had already taken, she states she still had not received "the application for the 'extra help' and reimbursement of out of pocket expenses from either the national social security trust fund offices, or the local field office, or . . . from [her] congressman's staff." *Id.* at 6.  She represents that she then "called the Area 10 Agency on Aging and spoke with a 'Holly,'" who sent the plaintiff "a letter dated November 3, 2010[,] informing [the plaintiff] that [Holly had] enrolled [the plaintiff] in a Part D program with some company called Well Care Classics." *Id.*  Holly allegedly took this action "without consulting [the plaintiff] or in any other way notifying [her] that she had taken this inniciative [sic] on [the plaintiff's] behalf." *Id.*

The plaintiff states that she should have been automatically reenrolled in the Part D program when Indiana resumed payment of the Part B premium as well as "the attached Part D Drug Plan," *id.* at 3, that is, "in March or April of 2009 not in November of 2010, 17 months later," *id.* at 7.  She believes that she was "not well served by the Federal Welfare Program adminisntering [sic] both MEDICARE, MEDICAID, & SOCIAL SECURITY TRUST FUND [and] she files this COMPLAINT" in order that "the DEFENDANTS . . . answer these charges." *Id.*  She alleges that "[t]he Agencys [sic] and their Directors and employees are negligent with

4

intent to harm a third party and perhaps, if polit[i]cally motivate[ed], hundreds of seniors at their

mercy." *Id.* at 8. She brings this action in order to recover "damages for her anxiety, stress, loss,

pain, and sufferign [sic] in the amount of ten thousand dollars . . . plus court costs, fees and other

expenses as well as restitution of her $51.49 out of pocket expense and future disruption of drugs

needed to maintain her health and safety." *Id.* at 7.

## II. DISCUSSION

### A. Dismissal Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

Among the defendants in this action are the current and former Secretaries of Health and

Human Services and Administrators of the Centers for Medicare and Medicaid Services. These

federal defendants characterize the plaintiff's lawsuit as raising a negligence claim, which must

be dismissed for lack of subject matter jurisdiction. *See* Federal Defendants' Memorandum in

Support of Motion to Dismiss ("Fed. Defs.' Mem.") [Dkt. #19] at 1.

"Federal district courts are courts of limited jurisdiction," and "it is to be presumed that a

cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

375, 377 (1994) (citations omitted). The plaintiff therefore bears the initial burden of

establishing by a preponderance of the evidence that the Court has subject matter jurisdiction

over her claim. *Id.*; *see Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of

Homeland Sec.*, 527 F. Supp. 2d 101, 104 (D.D.C. 2007). In deciding a motion brought under

Rule 12(b)(1), the Court "may consider materials outside the pleadings" and it must "accept all

of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. Food &

Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (internal quotation marks and citations

omitted).

Under the doctrine of sovereign immunity, the United States is immune from suit unless Congress has expressly waived the defense of sovereign immunity by statute. *See United States v. Mitchell,* 463 U .S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Consent may not be implied; it must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). A waiver of immunity is strictly construed in favor of the government, *Orff v. United States,* 545 U.S. 596, 601-02 (2005), and the United States' consent to be sued establishes the scope of the Court's jurisdiction, *see United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Absent a waiver, sovereign immunity shields the Federal Government . . . from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). "A plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush,* 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri-State Hosp. Supply Corp. v. United States,* 341 F.3d 571, 575 (D.C. Cir. 2003)).

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 (2010), is an example of Congress' waiver of sovereign immunity. Under the FTCA, the United States consents to suit in federal district court for certain, but not all, tort claims. *See, e.g., Richards v. United States,* 369 U.S. 1, 6 (1962). In order to maintain a suit under the FTCA, a plaintiff shall have "presented [her] claim to the appropriate Federal agency and [her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a) (2010). If the agency fails "to make [a] final disposition of a claim within six months after it is filed," it "shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim." *Id.* Absent such circumstances, however, the FTCA bars a plaintiff from bringing a civil

action in district court before she has exhausted these administrative remedies.  *See McNeil v.*
*United States*, 508 U.S. 106, 113 (1993).

The federal defendants argue that the complaint fails to establish this Court's subject
matter jurisdiction, Fed. Defs.' Mem. at 5, because she "has offered no evidence that she
submitted a proper claim to [the Department of Health and Human Services] . . . or any other
federal agency," *id.* at 6.  In their view, the Court "lacks subject-matter jurisdiction, [the
plaintiff's negligence] claims are barred by sovereign immunity, and the [C]ourt should dismiss
the Complaint."  *Id.* at 7.

The plaintiff "gives no credence to Defendants['] argument that [t]ort law is inapplicable
to federal ministerial employees as they, as individuals[,] accept the tax supported posts within
the general federal government."  Response to Federal Defendants['] Motion to Dismiss ("Opp'n
to Fed. Defs.' Mot.") [Dkt. #21] at 2.  Nor does the plaintiff believe that the government is
entitled to the protection of sovereign immunity absent a "referendum of the whole People."  *Id.*
She opines that "[t]he government structu[r]e, . . . its employees, representatives, ministers and
agencys [sic] have no more 'sovereign immunity' than Plaintiff as a person does."  *Id.* at 3.  The
plaintiff argues that her "claims are not barred by 'sovereign immunity' of any particular
individual or agency failure under the Republics administrators of government, social or
otherwise."  *Id.*  The plaintiff does not establish, however, that her claim is anything other than a
tort claim of negligence against the federal defendants to which the FTCA applies.  Absent a
showing that she has exhausted her administrative remedies with respect to her negligence claim,
the doctrine of sovereign immunity bars the claim.  *See, e.g., Peevy v. Donahue*, No. 11-1209,
2012 WL 699516, at *8 (D.D.C. Mar. 6, 2012) (dismissing intentional infliction of emotional
distress claim where plaintiff did not show compliance with the FTCA by filing administrative

claim prior to initiating lawsuit); *Johnson v. Sullivan*, 748 F. Supp. 2d 1, 14 (D.D.C. 2010)

(dismissing FTCA claim where the plaintiff had not exhausted his administrative remedies

before filing civil action in district court).

### B.  Dismissal Under Rule 12(b)(2) for Lack of Personal Jurisdiction

Anne Murphy, former Secretary of the Indiana Family and Social Services

Administration, *see* Memorandum in Support of Defendant Murphy's Motion to Dismiss for

Lack of Personal Jurisdiction, Improper Venue and Failure to Properly Plead her Claims

("Murphy Mem.") [Dkt. #13] at 1, moves to dismiss the complaint in part on the ground that the

Court lacks personal jurisdiction over her, *see generally id.* at 5-8.

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the

burden of establishing a factual basis for the Court's exercise of personal jurisdiction over each

defendant.  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); *First Chicago

Int'l v. United Exch. Co*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988).   To establish that personal

jurisdiction exists, the plaintiff must allege specific facts that connect the defendant with the

forum.  *Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C. Cir.

2001); *Kissi v. Panzer*, 664 F. Supp. 2d 120, 124 (D.D.C. 2009).  The Court is not required to

treat all of the plaintiff's allegations as true; instead, it "may receive and weigh affidavits and

any other relevant matter to assist it in determining the jurisdictional facts."  *United States v.

Philip Morris Inc*., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  The Court is required, however,

to construe this *pro se* complaint liberally, *see Howerton v. Ogletree,* 466 F. Supp. 2d 182, 183

(D.D.C. 2006), but no *pro se* plaintiff is "freed from the requirement to plead an adequate

jurisdictional basis for [her] claims," *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 (D.D.C. 2010).

The Court determines whether personal jurisdiction may be exercised "by reference to District of Columbia law." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). "A District of Columbia court may exercise personal jurisdiction over a person domiciled in, . . . or maintaining [her] . . . principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422 (2012). Nowhere in the complaint does the plaintiff allege that defendant Murphy either is domiciled in or maintains her principal place of business in the District of Columbia. In this circumstance, the Court engages in a two-part inquiry to determine whether it may exercise personal jurisdiction over a non-resident defendant. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). First, the Court must determine whether jurisdiction may be exercised under the District of Columbia's long-arm statute, and then must determine whether the exercise of jurisdiction comports with due process. *See id.*; *First Chicago*, 836 F.2d at 1377. This second component of the analysis turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). Such minimum contacts must arise from "some act by which the defendant purposefully avails [herself] of the privilege of conducting activities within the [District of Columbia], thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.,* 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). In other words, defendant Murphy's "conduct and connection with the [District of Columbia must be] such that [she] should reasonably anticipate being haled into court" in the District of Columbia. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In relevant part, the District of Columbia long-arm statute provides that:

> A District of Columbia court may exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's –
> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. . . .

D.C. Code § 13-423(a) (2012).[3]   The complaint alleges no facts suggesting that Murphy transacted business, contracted to supply services, or caused tortuous injury in the District of Columbia.[4]   Rather, it appears that defendant Murphy is sued only in her official capacity as the former head of Indiana's Family and Social Services Administration, and in this capacity conducted business on behalf of Indiana and Indiana residents within the state of Indiana.

The plaintiff responds by linking Murphy's duties to the administration of federal funds under the Medicare and Medicaid programs.  She asserts that Murphy "failed to mainatin [sic] her agency in a functional and proper state," and she is "the responsible party" whether the failures were her own or those of "underlings beneith [sic] her."  Response to Dismissal Murphy

---

[3]     The alternative bases set forth under the long-arm statute for exercising jurisdiction are inapplicable to this case.

[4]     Among the defendants in this action is Ms. Ricker, Chief Pharmacist at Marshes Pharmacy in Bloomington, Indiana.  *See* Compl. at 1 (caption).  The plaintiff alleges that Ricker refused to fill the plaintiff's prescription for a non-generic drug, *see id.* at 3, and refused to reimburse the plaintiff for her out-of-pocket costs to fill three other prescriptions, *see id.* at 4.  It does not appear that Ricker has been served, and no response to the complaint has been filed on her behalf.  As is the case with Murphy, the allegations of the plaintiff's complaint do not demonstrate that Ricker is domiciled in or maintains a principal place of business in the District of Columbia, or that she has transacted business, contracted to supply services, or caused tortious injury in the District of Columbia.  Even if service of process had been effected on Ricker, the plaintiff's claims against her would be subject to dismissal for lack of personal jurisdiction.  Accordingly, the claims against Ricker will be dismissed.

FSSA, Indiana ("Opp'n to Murphy Mot.") [Dkt. #17] at 2.  The plaintiff asks this Court to "hold . . . Murphy responsib[l]e for her negligence in Oct '10[,] where her agency did not honor the com[m]itment to pay the 'extra cost' for a Low Income Subsidy program for which the State of Indiana not only receives a grant in aid from federal medicare program but is mandated by its own State Legislature to pay the costs of care."  *Id.* at 4-5.

Even if Murphy had been responsible for handing federal funds as alleged by the plaintiff, she did so in Indiana on behalf of an Indiana agency for Indiana residents.  Where, as here, Murphy has no apparent contacts with the District of Columbia, this Court cannot exercise personal jurisdiction over her.  *See, e.g., Johnson v. United States*, 590 F. Supp. 2d 101, 111-12 (D.D.C. 2008) (finding that the Court could not exercise personal jurisdiction over Federal Bureau of Prisons employees working at the Federal Correctional Institution in Fort Dix, New Jersey); *Moore v. Motz*, 437 F. Supp. 2d 88, 93-94 (D.D.C. 2006) (dismissing complaint as to Maryland state judges and officials for lack of personal jurisdiction).

## C.  Dismissal Under Rule 12(b)(3) for Improper Venue

Murphy also argues alternatively that the complaint is subject to dismissal for improper venue.  *See* Murphy Mem. at 9.

Generally, the plaintiff bears the burden of demonstrating that venue is proper.  *See Walden v. Locke*, 629 F. Supp. 2d 11, 13 (D.D.C. 2009).  "In considering a Rule 12(b)(3) motion, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor."  *Id.* (quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)).  The relevant venue statute provides:

> A civil action [wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law,] may be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (2010).

Murphy argues that she is a resident of Indiana, and that Indiana is the district where the events giving rise to the plaintiff's claims occurred. Murphy Mem. at 9. The plaintiff's opposition does not address Murphy's venue argument at all. "[B]ecause an argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded," *Rosenblatt v. Fenty*, 734 F. Supp. 2d 21, 22 (D.D.C. 2010) (citations omitted), Murphy's motion to dismiss for improper venue would be granted as conceded, even if dismissal was not required on lack of personal jurisdiction grounds.

### D. Dismissal Under Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted

McLauchlin, Murphy, and the federal defendants move to dismiss the complaint under Rule 12(b)(6). *See* Defendant Holly McLauchlin's Memorandum of Law in Support of her Motion to Dismiss ("McLauchlin Mem.") [Dkt. #11] at 4; Murphy Mem. at 9-13; Fed. Defs.' Mem. at 7.

A plaintiff need only provide a "short and plain statement of [her] claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A complaint may be dismissed for failure to state a claim upon which relief can

be granted.  Fed. R. Civ. P. 12(b)(6).  In considering such a motion, the "complaint is construed liberally in the plaintiff['s] favor, and [the Court] grant[s] [a] plaintiff[] the benefit of all inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the [C]ourt need not accept inferences drawn by [the] plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Kowal*, 16 F.3d at 1276.  Nor must the Court accept "a legal conclusion couched as a factual allegation," nor "naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal,* 556 U.S. 662, __, 129 S. Ct. 1937, 1949-50 (2009) (internal quotation marks omitted); *see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (noting that the D.C. Circuit has "never accepted legal conclusions cast in the form of factual allegations" (internal quotation marks omitted)).

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal,* 556 U.S. at __, 129 S. Ct. at 1949.  A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*, 556 U.S. at __, 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556).  "A complaint [alleging] facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).  Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson,* 551 U.S. at 94 (internal quotation marks and citation omitted), it too, "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. District of*

*Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at __, 129 S. Ct. at 1950).

### 1.   Defendant Holly McLauchlin's Motion to Dismiss

The plaintiff identifies defendant McLauchlin as the Medicare Specialist with whom she spoke by telephone in 2010, *see* Compl. at 6, and who allegedly enrolled the plaintiff "in a Part D program with some company called Well Care Classics without consulting [her] or in any other way notifying [her] that she had taken this inniciative [sic] on [her] behalf."  *Id.*

McLauchlin moves to dismiss the complaint because it fails to "set forth any cognizable causes of action against" her.  McLauchlin Mem. at 2.  She argues that the plaintiff "has not set forth <u>any</u> facts showing that she is entitled to relief against Defendant Holly McLauchlin," and fails to even "recite a formulaic recitation of the elements of <u>any</u> cause of action," or to "even make a conclusory statement in relation to <u>any</u> cause of action that related to the brief 'allegations' as to Defendant Holly McLauchlin."  *Id.* at 4 (emphasis in original).

In her Response to Request and Order for Dismissal Holly McLaughlin, Defendant ("Opp'n to McLauchlin Mot.") [Dkt. #16] at 1-4, the plaintiff expresses her dissatisfaction with the Court's order granting McLauchlin's motion for an extension of time to file her motion without affording the plaintiff an opportunity to respond.  *Id.* at 4.  The plaintiff proceeds to express her views on the Court's "disrespect for citizen use of the public Court," *id.*, and its "elitist attitude . . . applied from top to bottom of the court structure as they raid the US Treasury of all resour[c]es while riding roughshod over the American Republic for their own comfort and gain," *id.* at 5.  The plaintiff's apparent attempt to articulate a legal claim consists of an allegation that defendant McLauchlin "did usurp Plaintiff[']s personal freedom and liberty both

under contract law and the US Constitution and perhaps the Magna Carta of John 1 King of

England 1218 AD."  *Id.* at 6.  In the plaintiff's view, McLauchlin "commandeer[ed] the personal

liberty of an equal citizen of the United States without knowing what she was doing."  *Id.*

### 2.  Defendant Murphy's 12(b)(6) Motion

Defendant Murphy describes the complaint as "a written stream of consciousness,"

Murphy Mem. at 9, which neither includes a short and plain statement of her entitlement to relief

as Rule 8(a) requires, nor is organized by numbered paragraphs as Rule 10(b) requires, *id.* at 10.

The only allegations relevant to Murphy are that the plaintiff's Part B coverage was discontinued

without notice, that the plaintiff opted out of Part B coverage rather than pay the premium

herself, and that certain government agencies and employees, presumably including the Indiana

Family and Social Services Administration, were negligent and harmed senior citizens.  *See*

Compl. at 1-2, 6-7  These allegations, Murphy argues, "are not sufficient to put [her] on notice of

the claims against her[,] to prepare an adequate defense . . . [or] allow the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'"  Murphy Mem. at

11 (quoting *Iqbal*, 556 U.S. at __, 129 S. Ct. at 1950).

### 3.  The Federal Defendants' 12(b)(6) Motion

The federal defendants argue that the complaint "fails to apprise [them] of the alleged

negligent conduct that caused [the plaintiff's] injuries," and it "fails to indicate what duty was

owed, by whom, and how breach of the duties caused her damages."  Fed. Defs.' Mem. at 7.

## 4.  The Defendants' 12(b)(6) Motions Will Be Granted

The Court has carefully reviewed the plaintiff's complaint in an attempt to understand the legal basis for claims the plaintiff is asserting against the defendants, and that attempt has been unsuccessful.  The plaintiff alleges negligence, yet the complaint fails to allege facts supporting such a claim.  Nowhere does the plaintiff articulate each defendant's duty of care, his or her breach of that duty, causation and resulting damages.  Nor do the plaintiff's commentaries about the government and its dysfunction amount to a cognizable legal claim.  It is not enough to allege, for example, that Murphy failed to pay for the plaintiff's Part B and Part D coverage for a period of time.  At most, the plaintiff alleges "facts which are merely consistent with a defendant's liability [and] stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at __, 129 S. Ct. at 1949 (quotation marks, brackets and citation omitted).  The plaintiff is no more successful in stating a viable claim against McLauchlin.  The plaintiff's assertion that McLauchlin enrolled her in a Part D program hardly articulates a "Constituion[a]l right[] to be informed and consent to any contractual obligations for or against her," Opp'n to McLauchlin Mot. at 7-8, particularly where the plaintiff has claimed an entitlement to Part D coverage and actively sought to have this coverage reinstated.  Lastly, with respect to the federal defendants, the plaintiff's complaint "fails to apprise [them] of the alleged negligent conduct that caused her injuries," leaving them "to guess as to what conduct [she] believed sounds in negligence."  Fed. Defs.' Mem. at 10.  The Court concurs.

The Court is not obliged to treat the plaintiff's conclusory statements as if they were factual allegations, and without these conclusory statements, the plaintiff utterly fails to state a viable claim against the defendants.  Her unsupported assertions are not "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and fail to raise her purported

claims from the realm of the possible to the realm of the plausible, *see Iqbal*, 556 U.S. at __, 129 S. Ct. at 1949.[5]

Accordingly, the Court will grant the defendants' motions to dismiss. The complaint and this civil action will be dismissed. An Order accompanies this Memorandum Opinion.

DATE: March 30, 2012 REGGIE B. WALTON
United States District Judge

---

[5] To the extent that the plaintiff brings this action to enforce Medicare and Medicaid provisions, see Opp'n to Murphy Mot. at 1 (seeking the "enforcement of [US title 42, sub section 1396 A & B, effective July 1[,] 1967],"), the claim fails because there is no such private right of action, *see Taylor v. St. Clair*, 685 F.2d 982, 988 (5th Cir. 1982) (affirming dismissal of Medicaid recipients' claim on the ground that "the Social Security Act[, *see* 42 U.S.C. §§ 1396-1396w-5 (2010),] affords no private right of action"); *Brown ex rel. Thomas v. Fletcher*, 624 F. Supp. 2d 593, 608-09 (E.D. Ky. 2008) ("Moreover, the Court has found no authority for the proposition that these Medicaid provisions and regulations are privately enforceable in any way other than [42 U.S.C.] § 1983, namely, through a private right of action within the Medicaid Act itself."); *Estate of Ayres ex rel. Strugnell v. Beaver*, 48 F. Supp. 2d 1335, 1339 (M.D. Fla. 1999) ("Congress has not, statutorily, provided any private federal right of action or remedy under the Medicare or Medicaid Acts."); *see Slovinec v. Illinois Dep't of Human Servs.*, No. 02 C 4124, 2005 WL 442555, at *7 (N.D. Ill. Feb. 22, 2005) (noting the plaintiff's failure "to point to any authority to suggest that Section 1396 provides a private right of action for his putative claims").